.
NO. 07-02-0410-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JUNE 3, 2004


______________________________



GARRETT WILLIAM FIFE, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 284TH DISTRICT COURT OF MONTGOMERY COUNTY;



NO. 01-11-06856-CR; HON. P. K. REITER, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before JOHNSON. C.J., and QUINN and CAMPBELL, JJ.

 Garrett William Fife (appellant) appeals his conviction for possession of a controlled
substance over 400 grams. Via seven issues, he contends that 1) the evidence was
insufficient to support his conviction, 2) his counsel was ineffective and 3) the trial court
erred in denying his motion for a new trial based on jury misconduct. For the following
reasons, we affirm. 


Background


 Officer Cole Lester with the Houston Police Department testified that he was
involved in a narcotics investigation in Montgomery County, Texas. Deputy Cash with the
Montgomery Sheriff's department assisted in the investigation. Initially, the investigation
concerned a man named Roy Rogers, and Lester set up surveillance on Rogers' house. 
During that time, Lester observed "vehicles coming in and out and departing" which based
on his "years of experience" was a "pattern for narcotics traffickers." Subsequently, Lester
and Cash approached the house to determine if they could obtain a consent to search,
which consent they received. While in the residence, they found "[m]ethamphetamine
paraphernalia and some actual substance and several containers, beakers, things that are
utilized in the production and manufacturing of methamphetamine."

 During the de-briefing of Rogers, the officers learned appellant's name and that 
"there were narcotics paraphernalia and/or substance. . ." at his residence. The officers,
along with two others, arrived at appellant's residence about 6:30 p.m. and knocked on the
door. Appellant's father answered the door and consented to a search of the house. 

 Appellant was found sleeping in a bedroom, but the officers awakened him. 
Furthermore, Lester observed next to the bed a plate with white residue and two
hypodermic needles. The items were then seized. Appellant then stated, "[w]hatever is
here, it's mine. It's not my brother's, it's not my dad's, it's mine." Permission was also
given to search the garage wherein some materials were found that traditionally were used
in a methamphetamine laboratory. 

 During a suppression hearing, appellant's father testified that he kept the garage
door closed, that he did not give permission for the police to go into his house and get his
son, that the police began searching appellant and his room and asked his father to leave
the room. He further testified that after they had searched appellant's room the officers
asked him (appellant's father) to sign a consent to search form. They purportedly intimated
that if he did not sign, he would be arrested. 

 Sheriff's deputy Cash testified that he was "certified by the U.S. Justice Department
as a clandestine lab investigator and a site safety officer." He testified that there were
"numerous methods" to manufacture methamphetamine such as the "Nazi method and the
red phosphorus, or Mexican National style." He also explained that by mixing red
phosphorus, iodine crystals and ephedrine (found in Sudafed) in a high-pressure flask or
a device that will hold pressure, it will have an exothermic reaction or the chemicals will
react very violently, and the composition of the ephedrine will change into
methamphetamine. Furthermore, the most common container used is "the single-neck
Erlenmeyer flask." However, "wine bottles, Coke-Cola [sic] bottles, whiskey bottles,
anything that will hold pressure" could be used, he continued. 

 While observing the garage, Cash purportedly saw a Coca-Cola bottle on the shelf
with an amber colored liquid in it. Also found were jars on the shelf with liquid in them, "a
box on the floor that ha[d] a Coca-Cola bottle with a hose taped to it sticking out," a "rolled
up 3/4 inch or 1 inch reinforced plastic hose," "some solvents and paint cans," and muriatic
acid. Cash stated that any time you are dealing with a clandestine meth lab many of these
were the items one looks for. And, as for the muriatic acid, it was "used to level out the pH
and is found in every drug lab," according to Cash. 

 In addition to describing the items discovered on the premises, Cash also testified
about his interaction with appellant and his father. Appellant was purportedly advised that
the officers were conducting a narcotics investigation and that they had received verbal
consent to search the house from appellant's father prior to entering the house and written
consent thereafter. Appellant's father allegedly told Cash that if there were any drugs in
there that he wanted them out of his house. 

 Cash also testified about how he entered the bedroom where appellant was sleeping
and noticed the Pyrex plate beside the bed. It contained white powder and two hypodermic
needles. In his closet were found over a dozen empty Sudafed boxes which drug
contained ephedrine. 

 Upon cross-examination, Cash stated that the officers "couldn't make a
determination at that point when the cook took place." Yet, the waste still contained a
percentage of methamphetamine, said Cash. 

 Ricky Duane Viser (Viser) testified for the State regarding the content of the gallon
jug labelled muriatic acid. After being tested extensively, it was found to contain
methamphetamine. Furthermore, he testified that the total weight of the liquid containing
methamphetamine was in excess of 400 grams. 

 Appellant called his own expert, Dr. Andrew Armstrong. The latter said that he had
tested the contents of the gallon jug and found that while there was some
methamphetamine present, it did not exceed 400 grams but rather constituted a trace.
Appellant also called his mother and father as witnesses. Mr. Fife testified that 1) the items
found in the garage were used in air conditioner repair and maintenance, 2) the muriatic
acid was used to clean the concrete driveway, and 3) his consent to search was
involuntary. In turn, appellant's mother testified that they collected items for recycling, i.e.
glass, plastic and tin and some of the items found in the garage came from that effort. 

 The jury found appellant guilty of possession of methamphetamine in excess of 400
grams. The court assessed punishment at 25 years in prison. Appellant filed a timely
motion for new trial, and a hearing was held on same. After the trial court denied
appellant's motion, appellant filed his notice of appeal.

Issue One - Insufficient Evidence


 In his first issue, appellant contends that the evidence was insufficient to support his
conviction for possession of methamphetamine because "the State relied on prejudicial and
non-relevant evidence to convict" him. We overrule the issue. 

 The standards by which we review the legal and factual sufficiency of the evidence
are well explained in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979), Sims v. State, 99 S.W.3d 600 (Tex. Crim. App. 2003), Zuliani v. State, 97 S.W.3d
589 (Tex. Crim. App. 2003), and King v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000). We
refer the parties to those opinions. 

 Next, possession of a controlled substance in penalty group 1 is established by
evidence that 1) a person 2) knowingly or intentionally 3) possessed 4) a controlled
substance. Tex. Health & Safety Code Ann. §481.115(a) (Vernon 2003). The offense
is one punishable by imprisonment for life or for a term not more than 99 years or less than
ten years if the amount possessed is, by aggregate weight, including adulterants or
dilutants, 400 grams or more. Id. at (f). 

 The evidence of record showed that 1) officers searched appellant's residence
based on information they received from a prior search and arrest, 2) they found a gallon
jug marked muriatic acid which tested positive for methamphetamine, 3) the State's expert
witness testified that the amount of methamphetamine exceeded 400 grams, and 4)
appellant admitted that any drugs found belonged to him and that neither his father or
brother had anything to do with it. And, though other evidence illustrated that the amount
possessed was less than 400 grams, this is some evidence upon which a rationale jury
could find, beyond reasonable doubt, that appellant possessed a controlled substance in
excess of 400 grams, when the weight of the dilutants and adulterants was considered as
per statute.

 As for the supposedly prejudicial and non-relevant evidence mentioned in his issue,
it allegedly included items seized at his residence that could be used for the manufacture
of drugs. And, because he was not charged with that offense, they allegedly were
irrelevant. We disagree for the State was obligated to show that appellant had knowledge
that what he possessed was indeed a controlled substance. Having paraphernalia used
to make a particular product is some evidence from which one could reasonably infer that
the possessor knew about the nature of the substance made with the paraphernalia, or at
least a trial court could have concluded such in the exercise of its discretion. See e.g.,
Gant v. State, 116 S.W.3d 124, 131 (Tex. App.--Tyler 2003, pet. ref'd) (noting the presence
of drug paraphernalia as a link connecting the appellant to the drug). In short, the decision
to admit the evidence did not fall outside the zone of reasonable disagreement. Nor did the
evidence somehow divest the verdict of evidentiary support.

Issue Two - Insufficient to Show Amount of Drug Possessed


 In his second issue, appellant contends that the State failed to prove that muriatic
acid was a dilutant of methamphetamine and, therefore, it failed to prove he possessed an
amount in excess of 400 grams. We disagree.

 As the State pointed out, appellant relies on arguments and authority in existence
prior to the change in the definition of a controlled substance. See Isassi v. State, 91
S.W.3d 807, 810 (Tex. App.--El Paso 2002, pet. ref'd). Now, "adulterant or dilutant" is
defined to mean "any material that increases the bulk or quantity of a controlled substance,
regardless of its effect on the chemical activity of the controlled substance." See Tex.
Health & Safety Code Ann. § 481.002(49) (Vernon 2002). Furthermore, the State has to
prove only that the aggregate weight of the mixture, including adulterants and dilutants,
equaled the minimum weight alleged in the charged offense. See Hines v. State, 976
S.W.2d 912, 913 (Tex. App.--Beaumont 1998, no pet.). And, because the evidence before
us showed that the State proved exactly what it alleged in the indictment (i.e. that appellant
possessed over 400 grams of methamphetamine, including adulterants or dilutants), we
again conclude that the evidence was sufficient to support appellant's conviction for
possessing more than 400 grams of methamphetamine.

Issue Five - Motion for New Trial based on Jury Misconduct


 Appellant contends, in his fifth issue, that the trial court erred in denying his motion
for new trial based on juror misconduct. The issue involved the conduct of Clifford Danny
O'Connor, an individual who had received special training in air conditioning repair from the
Lincoln Technical Institute. According to appellant, O'Connor informed the other jurors,
during deliberation, that "[t]he plastic bottle with the hose coming out of it wouldn't work to
clean out drain lines." Such a theory was proffered by appellant as an explanation as to
why it was present at the house. Instead, according to "O'Connor, "[t]o clean out the line
you would have to blow out the line with pressure, like a compressor or a [sic] air bottle, or
tank." So informing his colleagues purportedly arose to the level of juror misconduct and
warranted reversal. We overrule the issue.

 No evidence of record illustrates that O'Connor told the jury of the information in
question. Such appears neither in his affidavit nor the testimony elicited at the hearing on
the motion for new trial. There being no evidence to support appellant's contention, the trial
court did not abuse its discretion in overruling the motion for new trial. See Salazar v.
State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001) (holding that whether a trial court erred
in denying a motion for new trial depends upon whether it abused its discretion).

Issues Three, Four, Six and Seven - Ineffective Assistance of Counsel 


 In issues three, four, six and seven, appellant contends that trial counsel was
ineffective because he 1) allowed "non-relevant and prejudicial evidence to be admitted,"
2) failed to request a lesser-included offense in the jury charge, 3) failed to elicit pertinent
information from the venire during voir dire about the work experience of its members, and
4) failed to attack the element of possession. We overrule the issues.

 The standard by which we review claims such as these is well established. 
Therefore, it will not be repeated. Instead, we cite the parties to Strickland v. Washington,
466 U.S. 668, 687-95, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Bone v. State, 77 S.W.3d
828 (Tex. Crim. App. 2002) and Tong v. State, 25 S.W.3d 707 (Tex. Crim. App. 2000), for
explanation of same. Furthermore, claims of ineffective assistance must be firmly founded
in the record. Rios v. State, 990 S.W.2d 382, 385 (Tex. App.--Amarillo 1999, no pet.). (1)

 Nothing of record indicates the reasoning, if any, for counsel 1) withholding objection
to the supposedly prejudicial evidence, 2) withholding a request for a lesser-included
offense, and 3) purportedly failing to attack the element of possession. And, though
appellant moved for a new trial, his effectiveness was not raised in the motion. 

 As required by the applicable standard of review, we must presume that his conduct
was reasonable and professional until the appellant shows otherwise by a preponderance
of the evidence. Bone v. State, 77 S.W.3d at 833. Seldom can that burden be met through
reliance on the trial record. Id. Moreover, we can see potential strategy underlying that
which is questioned here. For instance, and regarding the supposed prejudicial evidence
(which happens to be the same evidence we addressed in the preceding issue), we found
it to be both relevant and admissible. Thus, counsel may not have objected to it because
he concluded similarly. And, it is clear that counsel need not object to admissible evidence
to be effective. Saenz v. State, 103 S.W.3d 541, 546 (Tex. App.--San Antonio 2003, pet.
ref'd) (holding that the failure to object to admissible evidence is not deficient conduct). 

 As to the failure to request a lesser-included offense, it has been recognized that
such may well be a reasonable trial strategy. See Wood v. State, 4 S.W.3d 85, 87 (Tex.
App.--Fort Worth 1999, pet. ref'd) (stating that it may be reasonable trial strategy not to
request a lesser-included offense). Given the testimony by appellant's own expert that the
muriatic acid solution contained less than 400 grams of methamphetamine, counsel may
well have thought it best to pursue an all or nothing tactic. And, "[i]t is not uncommon in a
case such as this" to do so. Id. at 88. 

 As to the allegation that counsel was ineffective since he failed to attack the element
of possession (i.e. that he, as opposed to someone else, possessed the container holding
the muriatic acid and methamphetamine), appellant's exclamation to the officers that the
drugs were his, as opposed to his father's or brother's, may have swayed counsel's trial
stratagem. And, such could well have been reasonable under the circumstances. 

 In short, we are left to guess at why counsel did what he did viz the three complaints
we mentioned. And given that we cannot say his conduct was bereft of potential stratagem
in view of the circumstances (or lack thereof) of record, appellant did not rebut the
presumption mandated by the Texas Court of Criminal Appeals in Tong, Bone, and many
other opinions.

 As to the fourth allegation of deficient performance, appellant thought that his
attorney should have asked the venire, during voir dire, about their work experience. This
would have probably led to one juror declaring that he had knowledge about air
conditioning repair, suggested appellant. The latter continued by opining that because the
juror would have probably so declared and because the topic related to a line of defense
being proffered, the juror would probably have been challenged and removed from the pool. 
And, had the juror been removed, he would not have "offered his 'expert' opinion [about
various aspects of air conditioning repair] once the jury retired to deliberate," according to
appellant. In other words, appellant argued that his attorney's purportedly deficient conduct
harmed him because the juror in question (most likely O'Connor though he was never
named) voiced opinions about the legitimacy of a particular defensive theory posed by
appellant. Assuming arguendo that counsel's action was deficient (something we do not
decide), we would nonetheless find the contention meritless. This is so because no
evidence appears of record indicating that the juror in question told his fellow jurors about
his opinions regarding air conditioner repair and whether appellant's defensive theory had
any legitimacy. There being no evidence of that, appellant has not shown that but for the
act of his attorney there existed a reasonable probability that the outcome of the trial would
have differed. See Tong v. State, 25 S.W.3d at 712 (stating that to be the test for harm). 
 

 Having overruled each of appellant's issues, we affirm the trial court's judgment.


 Brian Quinn

 Justice


 

Do not publish.
1. A motion for new trial was filed but it was not based on a claim of ineffective assistance of counsel.