IN THE COURT OF CRIMINAL APPEALS


OF TEXAS



 




NO. 74,080






ROBERT LEE WOODARD, Appellant



v.



THE STATE OF TEXAS






APPEAL FROM


HARRIS COUNTY






 Womack, J., delivered the opinion for an unanimous Court.



 The appellant was found guilty of the capital murders of Thankachen Mathai and
Achamma Mathai, who were husband and wife. He was sentenced to death on March 8,
2001. On appeal, he presents six points of error about the trial on the issue of guilt, and five
more points about the punishment stage.

 The Mathais owned and operated a convenience store in Houston. On the night of
February 12, 2000, Thankachen was working at the store, and Achamma had brought him
dinner. Between 10 and 11 p.m., Cory Calloway bought gasoline from the store's pumps for
his 1989 Lincoln. Leaving the engine running at the gas pumps, Calloway went to a pay
telephone at the side of the building.

 While Calloway talked on the phone, Garvina Sadiki came in the store to buy
merchandise. As Sadiki paid for her items, a man dressed in a hooded jacket entered the
store with a gun in his hand. The man fired a shot and said, "This is a robbery. Don't anybody
move."

 The robber ran behind the counter where Thankachen and Achamma stood, and
ordered Thankachen to open the register. He ordered Sadiki not to look at him, and she
obeyed. When Thankachen could not get the register open, the robber shot him. The man
then ordered Achamma to open the register and threatened to shoot Thankachen again if she
did not. Achamma cried and screamed, begging the man not to hurt them. As she fumbled
with the register, the man pointed the gun toward Thankachen and fired another shot.

 Hearing police sirens, the robber cursed and ran from behind the counter to the front
door only to discover that it had been locked. The man screamed for Achamma to open the
door. Sadiki heard the lock open, and she saw the man push open the door. Then the robber
returned to the counter where Achamma and Sadiki were standing. He backed up to Sadiki,
keeping his face hidden, and demanded her keys. Sadiki handed the man her keys. The man
said to Achamma, "Bitch," and he shot her in the head. He then ran out the front door.

 Outside the store, Calloway was still talking on the telephone. He heard the gunshots
and then "a loud bust through the door." He looked up and saw a person wearing a hooded
sweater run toward his Lincoln. Calloway ran toward the man, who pointed a gun at him.
Calloway retreated to safety, and the man drove away in Calloway's Lincoln. Calloway went
in the store and called for help.

 Police officers arrived quickly. Achamma was already dead. Thankachen died shortly
after being taken to a hospital. I. Guilt-stage Issues

 The appellant's complaints include (A) two points about illegal search and seizure,
(B) two points about improper identification procedures before trial, (C) a point about
improper identification procedures during trial, and (D) a point about the court's charge.

A. Search and Seizure

1. Identifying the Appellant's Complaints

 We must specifically identify the appellant's complaints about search and seizure,
because the facts and the law will require different treatments of the several complaints.
We find that, within his first two points, the appellant presents nine complaints.

 The first point of error in the appellant's brief is that the "trial court erred in denying
the appellant's motion to suppress the appellant's arrest in violation of" Article I, Section 3
of the Texas Constitution and Articles 14.04 and 38.23 of the Code of Criminal
Procedure. (1) The second point, which complains of the same error, is different only in that it
invokes the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (2)

 The motion to which the points refer was the appellant's "Motion to Suppress the
Arrest and Search of Defendant." (3) The title of his motion cannot be taken literally. A court
could not have suppressed the arrest and the search of the appellant, which were performed
months before the motion was filed. It could have "suppressed," by ruling inadmissible,
evidence that was obtained as a result of an illegal arrest or search. The texts of the motion
and the brief, and the record of the proceedings before and during the trial, make it clear
enough that these points complain of the admission of such evidence.

 The appellant's brief specifies three kinds of evidence: "As a result of the
appellant's arrest, the State was able to introduce at trial [1] evidence that was seized from
apartment 414 (R. XXV, 112-113; State's Exhibit 111) as well as [2] the line-up (State's
Exhibit 4) and [3] Calloway's 'strong tentative' identification." (4)

 Therefore, we can tell that the appellant's first two points comprise nine complaints
about the admission of evidence. Point one has six complaints, three of which are that the
admission of each kind of evidence was contrary to the state constitution, and three of
which are that the admission of each kind of evidence was contrary to state statutes. Point
two presents three complaints, which are that the admission of the three kinds of evidence
violated the federal constitution.

2. Inadequate Briefing

 The appellant's brief presents and argues points one and two together. (5) The argument
is that the arrest of the appellant without warrant violated Article 14.04 of the Code of
Criminal Procedure. The argument has no discussion or citation of either the state
constitution or the federal constitution. We hold that the three state-constitutional
complaints in point one and the three federal complaints in point two are inadequately
briefed.

 Appellate complaints that purport to be based on both state law and federal
constitutional law are not rare. We have held more than once that the mere invocation of a
provision of the state constitution is not enough; the appealing party must present an
argument, supported by authority, that explains why each constitution has been violated. (6)

An appealing party is obliged to present argument and authority for complaints that the
federal constitution was violated as well as for complaints that are based on state law. (7)

 The appellant has presented neither argument nor authority to support the nominal
complaints in point one that the denial of his motion violated the state constitution or the
complaint in point two that the ruling violated the Fourth, Fifth, and Fourteenth
Amendments of the United States Constitution. Therefore, we hold that the six
constitutional complaints in points one and two are inadequate for review. Point of error
two is overruled. 

3. Facts relevant to Point One

 We shall turn to the portion of point one that complains that, under state statutes, the
trial court erred by admitting three types of evidence: (1) "evidence that was seized from
apartment 414," (2) "the line-up (State's Exhibit 4)," and (3) "Calloway's 'strong tentative'
identification."

 About a day and a half after the Mathais were murdered and Calloway's automobile
was stolen, someone reported to police that the automobile was parked at an apartment
complex several miles from the crime scene. Police seized the vehicle.

 Five days after the crime, an individual gave investigators information that they used
to get a warrant to search an apartment near the place where the stolen automobile had been
found. In the apartment, they found property that had been taken from Calloway's
automobile. At the apartment were three people (one of whom was the appellant's brother)
who said the appellant told them he had shot and killed some people at a store and stolen a
customer's car. They said that the appellant had brought stolen property with him, and that
he had asked one of the occupants to hide his gun for a few days. The appellant's brother
told investigators where the appellant lived.

 While the investigators were preparing an affidavit for a warrant to arrest the
appellant, other officers kept a watch on the apartment building where the appellant lived.
After midnight, the officers saw the appellant walking near the apartment building, and they
seized him. They had no warrant, and the investigators abandoned their efforts to get a
warrant when they heard that the appellant had been arrested.

 The appellant gave the officers written consent to search the apartment, which was
the "apartment 414" to which his brief refers. The officers went to the apartment, where
Andrea Nero opened the door. She said it was her apartment. Officers testified that she and
the appellant lived there together. She consented to the search, and she added her signature
to the written consent that the appellant had signed. In the apartment, the officers found a
"gym bag" or "canvas bag" that contained a box of ammunition, which was admitted in
evidence as State's Exhibit 111. (8) Also in the bag were clothing, a camera and film, two
telephones, some jewelry, and "some I.D. cards attached to a neck strap and had Reginald
Willis and looked like an I.D. number of some type on each card." (9)

 Later that day, investigators put the appellant in a lineup for viewing by Garvina
Sadiki and Cory Calloway, the customers who were at the store during the robberies and
murders. State's Exhibit 4 was a copy of a videotape recording of the lineup, which was
shown to the jury.

 Calloway testified on direct examination that he recognized the appellant in the
lineup, and that he told a police investigator that he "strongly agreed" that the appellant was
the person who stole his automobile. He requested to see the appellant in a hood, because
the person who stole his car was wearing a hooded sweatshirt, but the police could not find
one to put on the people in the lineup. On cross-examination, Calloway testified that he told
the police officer, "I was strongly tentative.  I said I would be 100 per cent sure if I see
the hood," that "I strongly believed that it was" the appellant, and that "I would be more sure
if I had the hood.  But that's what I meant by saying positive, is being strongly tentative
about it. The only reason I had doubt was the hood."

 A police investigator who conducted the lineup gave similar testimony about
Calloway's identification of the appellant at the lineup.

4. Mootness of Complaint About Admission of Evidence Seized from Apartment 414

 The appellant complains that the trial court erred in admitting the evidence seized
from Apartment 414. This evidence was the box of ammunition that officers found in the
apartment. The appellant argues that it was illegally obtained, because it was found during a
search to which he consented after being illegally arrested. The State argues that the illegal
arrest did not taint the appellant's consent.

 The issue of the validity of the appellant's consent is moot. Andrea Nero's consent
to search her apartment was sufficient authority for the officers' search. Insofar as point
one complains of the admission of the box of ammunition on state-law grounds, it has no
merit.

5. Failure to Object to Admission of Calloway's Identification 

 The appellant also complains that the trial court erred in admitting Calloway's
identification of him. However, the appellant made no objection at trial to Calloway's
testimony about his identification of the appellant in the lineup or to the police
investigator's testimony about Calloway's identification of the appellant in the lineup. Rule
of Evidence 103(a) says, "Error may not be predicated upon a ruling which admits 
evidence unless  a timely objection or motion to strike appears of record, stating the
specific ground of objection, if the specific ground was not apparent from the context."
Therefore, error may not be predicated on the admission of that testimony.

6. Admission of the Line-Up (State's Exhibit 4)

 The only one of the appellant's nine complaints in points one and two that was
preserved in the trial court and properly presented for appellate review in this Court is that
the videotape recording of the lineup was admitted in violation of state statutes.

 The officers seized him illegally, the appellant says, because they did not satisfy two
requirements of Article 14.04 of the Code of Criminal Procedure for an arrest without
warrant: that the persons who gave information to the police be credible and that the
suspect be about to escape. (10) By this illegal arrest, he says, the State obtained the videotape
recording of the lineup.

 The State argues that the arrest was authorized by Article 14.04: "Not only did
officers have probable cause to arrest appellant but appellant was about to escape so that
there was no time to procure a warrant." (11) The State sets out the evidence of probable cause,
and continues:

 Officers then began preparing an arrest and search warrant. Meanwhile, other
officers went to conduct surveillance at appellant's apartment. Between 1:15
a.m. and 1:30 a.m., officers observed a person fitting appellant's description
leaving the vicinity of Apartment 414 at 11700 Bissonnet, and proceed down
the sidewalk at a steady pace. Sgt. Welch approached appellant, identified
himself as a police officer, and asked appellant his name. Appellant stated his
name was Robert Woodard and produced his driver's license. Sgt. Welch
placed appellant under srrest and put him in his police car. Sgt. Welch advised
appellant he was under arrest for capital murder and gave him his Miranda
warning. (12)


 These facts do not show, and the State does not attempt to explain how a court could
find, that the appellant was about to escape. The State's brief continues by assuming that the
arrest was illegal, (13) and we hold that it was illegal in that it was not authorized by Article
14.04 of the Code of Criminal Procedure.

 Evidence obtained in violation of the laws of the state may not be admitted in
evidence against the accused on the trial of a criminal case. (14)

 There was no evidence that the illegal arrest of the appellant was ever cured or that
his detention at the time of the lineup was made legal by authority of a magistrate. The
police investigators testified that they abandoned their efforts to obtain a warrant when they
heard that the appellant was arrested without warrant. There was no evidence that the
appellant was taken before a magistrate, (15) or that his detention at the time of the lineup was
under the authority of a magistrate rather than whatever authority an officer might have to
arrest without a warrant. (16)

 We hold that the trial court erred in admitting State's Exhibit 4, the videotape
recording of the lineup that followed the illegal arrest of the appellant.

7. Harm

 We must consider the harm of the error in admitting the videotape recording of the
lineup. An appellate court judges the harm of admitting evidence that was obtained in
violation of a statute like Article 14.04 of the Code of Criminal Procedure by the standard
of Rule of Appellate Procedure 44.2(b): "Any other [that is, other than constitutional]
error, defect, irregularity, or variance that does not affect substantial rights must be
disregarded." Under that rule, an appellate court may not reverse for non-constitutional
error if the court, after examining the record as a whole, has fair assurance that the error
did not have a substantial and injurious effect or influence in determining the jury's
verdict. (17)

 Here, the erroneously admitted evidence was a videotape recording of a lineup. The
other evidence that was admitted without a finding of error in this appeal included oral
testimony about the lineup, testimony about the identification of the appellant at the lineup,
and an in-court identification of the appellant by one of the witnesses who viewed the
lineup. Considering this evidence, as well as the other properly admitted evidence of guilt
and the other aspects of the trial, we hold that the erroneous admission of State's Exhibit 4
was harmless. Point of error one is overruled. 

B. Identification

1. Before Trial

 In his third point of error, the appellant complains that "[t]he trial court erred in
denying the appellant's motion to suppress identification by Cory Calloway in violation of
the Fifth and Fourteenth Amendments of the United States Constitution." (18) The fourth
point, which complains of the same error, is different only in that it invokes Article 38.23
of the Code of Criminal Procedure and Article I, Sections 10 and 19 of the Texas
Constitution. (19) In both these points, the appellant complains that "the combination of seeing
the appellant in a live lineup that contained dissimilar individuals, viewing a photospread of
the appellant sometime during the investigation (State's Exhibit 2), then seeing that
individual in court while wearing a hooded garment--without any other individuals to
compare him to--created an [sic] with respect to Calloway an impermissibly suggestive
identification procedure that violated the appellant's rights." (20)

 The appellant's brief presents points of error three and four together. He fails to
distinguish between federal protections and those afforded by state law. Therefore, we will
discuss the points together; we need not determine whether the state constitutional
protections are more expansive than that afforded by the federal constitution. Heitman v.
State, 815 S.W.2d 681 (Tex. Cr. App. 1991). 

 In reviewing whether an identification procedure was so impermissibly suggestive as
to give rise to a very substantial likelihood of misidentification, we look to the totality of
circumstances surrounding the identification to determine if the procedure was
unnecessarily suggestive. Webb v. State, 760 S.W.2d 263, 269 (Tex. Cr. App. 1988). An in-court identification that has been tainted by an impermissibly suggestive pretrial
identification is inadmissible. Loserth v. State, 963 S.W.2d 770, 771-72 (Tex. Cr. App.
1998). A two-step analysis is applied in determining whether an in-court identification has
been tainted: (1) whether the out-of court identification procedure was impermissibly
suggestive, and, if suggestive, (2) whether that suggestive procedure gave rise to a
substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S.
377, 384 (1968). The appellant bears the burden of establishing that the pretrial
identification procedure was impermissibly suggestive and that the in-court identification
is unreliable. Delk v. State, 855 S.W.2d 700, 706 (Tex. Cr. App. 1993). 

 The appellant contends that the identification was impermissibly suggestive based on
the combination of three factors: (1) seeing the appellant in a live lineup with dissimilar
individuals, (2) viewing a photospread of the appellant during the investigation, and (3) then
seeing that individual in court wearing a hooded garment without other individuals for
comparison. 

 Though it is good practice that the individuals in a lineup be as similar as possible, a
pretrial identification procedure is not impermissibly suggestive simply because the lineup
members are not identical in appearance. Buxton v. State, 699 S.W.2d 212, 216 (Tex. Cr.
App. 1985). The appellant argues that the lineup individuals had dissimilar facial hair and
hair lengths. We hold, however, that these differences did not render the lineup
impermissibly suggestive. (21)

 The appellant also complains that "the repeated showing of the appellant's picture
was suggestive." (22) On February 18, 2000, Calloway viewed the lineup in which he made a
strong tentative identification of the appellant, qualified only by the fact that he wished he
could see the individuals in the lineup wearing hoods on their heads, as did the suspect on
the night of the robberies and murders. Approximately one month later, Calloway viewed a
photospread in which all the individuals appeared to be wearing hoods. Calloway positively
identified the appellant. Because Calloway had previously identified the appellant, viewing
another display was not impermissibly suggestive. (23) 

 Finally, the appellant claims the identification was unduly suggestive because
Calloway saw the appellant wearing a hooded garment at trial and "there was no one else
donning a similar garment." (24) The appellant complains of Calloway's identification of the
appellant during trial; however, Calloway had already identified the appellant, both in a
pretrial lineup and during trial without a hood. Therefore, Calloway's in-court identification
of the appellant while wearing a hood could not have affected Calloway's previous
identification of the appellant. Furthermore, the appellant's points of error relate to his
motion to suppress, a pretrial motion. The trial court could not have erred in denying the
motion based on a fact that had not yet occurred -- that the appellant would put on a hooded
garment during trial.

 The appellant's points of error three and four are overruled. 

2. During Trial 

 In his fifth point, the appellant complains that "the trial court abused its discretion in
allowing the State to conduct an in-court demonstration that required the appellant to put on
a hooded sweatshirt during the testimony of Cory Calloway." (25) In particular, the appellant
argues that the trial court erred in "forcing the appellant to put on the hooded garment in the
absence of others similar to the appellant being required to don the same sort of
garment." (26) Absent a foundation for the demonstration, according to the appellant, the trial
court should have excluded the evidence. 

 It has been held proper during a trial to require the defendant to stand, put on a hat,
remove his glasses or make a footprint--all for the purpose of identification. See Taylor v.
State, 464 S.W.2d 410 (Tex. Cr. App. 1971). Point of error five is overruled. C. Charge 

 The sixth point of error in the appellant's brief is that "the trial court erred in failing
to submit a jury instruction that Reginald Willis was an accomplice witness as a matter of
law." (27) The appellant claims that "the trial court merely instructed the jury that the question
of whether Reginald was an accomplice [was] a fact question[,]" and that it should have
"submitted an instruction that he was an accomplice as a matter of law." (28) 

 An accomplice witness is an individual who participated with the defendant before,
during, or after the commission of the crime for which the defendant is on trial.
McFarland v. State, 928 S.W.2d 482, 514, cert. denied, 519 U.S. 1119 (1997). 

The participation must involve some affirmative act committed by the witness to promote
the commission of that offense. Id. 

 In order to be an accomplice as a matter of law, the witness must be susceptible to
prosecution for the offense with which the accused is charged. Id. Only when there exists
no doubt, or when the evidence clearly shows, that a witness is an accomplice witness as a
matter of law is the trial judge under a duty to so instruct the jury. Blake v. State, 971
S.W.2d 451, 455 (Tex. Cr. App. 1998). When there is a conflict in the evidence, or a doubt
or a question as to whether a witness is an accomplice witness, it is proper to submit the
question as a fact issue to the jury. Harris v. State, 738 S.W.2d 207, 216 (Tex. Cr. App.
1986). 

 Here, Willis testified that the appellant told him that he had committed the robbery,
stolen Lotto tickets, shot someone, robbed a man of his car, and then went to Willis's
house with the stolen goods. Willis saw the appellant with a gun and heard the appellant say
that he wanted to get rid of it. A witness is not an accomplice witness merely because he
may have known of an offense and did not disclose it, or even if he concealed it.
McFarland, 928 S.W.2d at 514. Willis took and sold some of the stolen items and cashed
the stolen Lotto tickets; various items stolen from the car were recovered from Willis's
apartment. However, complicity with an accused in the commission of one offense does
not make that witness an accomplice in a different offense. Id. 

 Although the testimony implicated Willis as possibly having some role after the
robbery and murder, the evidence is insufficient to have placed the judge under a duty to
instruct the jury that Willis was an accomplice to the murder as a matter of law. Point of
error six is overruled. 

II. Punishment-stage Issues

 The appellant's complaints include (A) two points about victim-impact evidence, and
(B) three points about the mitigation special issue. 

A. Victim-impact Evidence The seventh and eighth points of error in the appellant's brief complain that "the trial
court abused its discretion in allowing victim-impact testimony from individuals not named
as complainants in the indictment," specifically, the convenience-store customers Garvina
Sadiki and Cory Calloway. The points differ only in that one cites the Fifth, Eighth, and
Fourteenth Amendments to the United States Constitution, and the other invokes Article I,
Sections 3, 10, and 19 of the Texas Constitution. The brief argues the points jointly. 

 When the State called the first of these witnesses, the appellant asked the trial court
to rule on three motions that he had filed two months previously. He said that the motions
had to do not only with the testimony of the two customers, but also with that of the
victims' daughter. On appeal, the daughter's testimony is not included in these points. The
court denied the motions. The customers testified briefly about the effect of the crime on
their lives. Their combined testimony occupies only four pages of the reporter's record.

 It is a prerequisite to presenting a complaint on appeal that the record show that the
complaint was made to the trial court. Tex. R. App. P. 33.1(a)(1). The appellant has
identified, in his brief, the three motions by which he presented complaints to the trial
court. (29) They failed to preserve his points of error for our review.

 The first of the three motions asked the court to hold Article 37.071 of the Code of
Criminal Procedure unconstitutional because it allowed the introduction and use of victim-impact evidence regarding the deceased victims and the impact the crime had on their
family. The second motion was a "motion in limine" that asked the court to instruct the
State and its witnesses not to refer to the "personal characteristics of the deceased or to the
emotional impact of the death of the deceased on friends and family." These motions did
not present the complaint that is now raised on appeal in points seven and eight, which has
to do with evidence of the impact of the crime on persons other than the deceased victims'
friends and family.

 The third motion "requests that the State be required to detail, in writing, exactly
which witness will testify and the substance of the testimony regarding victim impact." It
also "requests that the Court conduct a pretrial hearing to evaluate each witness's testimony
and demeanor." Neither of these requests amounts to an objection to the customers'
testimony. They request only a written summary of evidence and a hearing.

 The record also shows that, after the customers testified and before the victims'
daughter was called to the stand, the appellant's counsel agreed that he was satisfied with
the oral discussions he had with the prosecutor "without the need to insist on a written
synopsis." When the court asked if he needed to take up anything about the content of the
daughter's testimony, "since you've asked for a hearing," counsel said, "No, judge."

 Because no objection was voiced to the customers' testimony and no objections
appeared in the motions the appellant asked the court to rule on prior to their testimony, the
appellant did not provide the prerequisite to presenting his complaint. Points of error seven
and eight are overruled.

B. Mitigation Special Issue 

 In points of error nine, ten, and eleven, the appellant complains about the mitigation
special issue at punishment. The ninth point of error in the appellant's brief is that
"especially after the Mosley decision declaring victim evidence admissible to 'rebut'
mitigation, and also in light of the Supreme Court's decision in Apprendi v. New Jersey,
the mitigation special issue at punishment is infirm as a matter of federal Eighth
Amendment constitutional law because it omits a burden of proof." (30) The tenth point of
error is different only in that the appellant argues the mitigation issue is infirm because "it
makes impossible any meaningful appellate review of the jury's determination." (31) In point
eleven, the appellant argues that "Art[icle] 44.251. . . requiring appellate review of
sufficiency of all capital punishment special issues, when interpreted in conjunction with
Art[icle] 37.071, Sec[tion] 2(e). . . , placing no burden of proof in the mitigation special
issue, is facially unconstitutional, violating the Eight Amendment to the United States
Constitution." (32) 

 We have previously rejected identical claims and decline to revisit these issues. See
Blue v. Smith, 125 S.W.3d 491, 500-01 (Tex. Cr. App. 2003); Jackson v. State, 33 S.W.3d
828, 840-41 (Tex. Cr. App. 2000); Tong v. State, 25 S.W.3d 707, 715 (Tex. Cr. App.
2000). Points of error nine, ten, and eleven are overruled. 

 We affirm the judgment of the trial court. 


En banc.

Delivered: October 20, 2004.

Do Not Publish
1. Brief, at 30. 
2. Id., at 30.
3. See ibid. (citing the page of the record where the motion appears.)
4. Id., at 30-31.
5. See id., at 30-37.
6. See, e.g., Ex parte Hernandez, 953 S.W.2d 275, 286 (Tex. Cr. App. 1997) (court would
not consider appellant's "bare assertions, unsupported by argument, analysis, or authority," that if a
ruling did not violate the federal constitution, it did violate the state constitution); Ex parte Granger,
850 S.W.2d 513, 515 n.6 (Tex. Cr. App. 1993) (appellant did not properly present state-law claim
when he offered no authority or argument specific to the state constitution).
7. Rhoades v. State, 934 S.W.2d 113 (Tex. Cr. App. 1996) (plurality opinion) (simple
declaration that ruling violated federal constitution, without argument or authority, was not sufficient). 
8. See 25 Reporter's Record ("RR") 112-13.
9. See id., at 136-39. An officer testified, "Correct," in answer to the question, "Two Aramark
employee I.D.'s for Reginald Willis and a temporary T.A.B.C. Commission I..D., right?" Id., at 144.
10. Brief, at 33-37 (citing Tex. Code Crim. Proc. art. 14.04: "Where it is shown by satisfactory
proof to a peace officer, upon the representation of a credible person, that a felony has been
committed, and that the offender is about to escape, so that there is no time to procure a warrant, such
peace officer may, without warrant, pursue and arrest the accused").
11. Brief, at 15 (punctuation sic).
12. Id., at 16 (citations to record omitted).
13. "Even assuming, while not conceding, appellant's arrest were unlawful, appellant has neither
alleged nor demonstrated that appellant's illegal arrest tainted appellant's written consent to search."
Ibid.
14. Tex. Code Crim. Proc. art. 38.23(a) ("No evidence obtained by an officer or other person
in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the accused on the trial of
any criminal case").
15. See Tex. Code Crim. Proc. art. 15.17(a) ("In each case enumerated in this Code, the
person making the arrest shall without unnecessary delay take the person arrested or have him taken
before some magistrate of the county where the accused was arrested").
16. Cf. Johnson v. Louisiana, 406 U.S. 356, 396 (1972) (constitutional validity of defendant's
arrest was beside the point when defendant was brought before a committing magistrate before lineup,
continued detention was under authority of this commitment, and lineup was conducted not by
exploitation of the challenged arrest but by means sufficiently distinguishable to be purged of the primary
taint).
17. Garcia v. State, 126 S.W.3d 921, 927 (Tex. Cr. App. 2004); Motilla v. State,78 S.W.3d
352, 355-58 (Tex. Cr. App. 2002); Johnson v. State, 967 S.W.2d 410, 417 (Tex. Cr. App.1998).
See King v. State, 953 S.W.2d 266, 271, 273 (Tex. Cr. App.1997).
18. Brief, at 37. 
19. Id. 
20. Id., at 41. 
21. Cf. Barley v. State, 906 S.W.2d 27, 33 (Tex. Cr. App. 1995) (discrepancy in heights of the
five participants of several inches did not render lineup impermissibly suggestive); Buxton, 699 S.W.2d
at 216 (discrepancy in heights, weight, and skin color of participants did not render lineup impermissibly
suggestive). 
22. Brief
, at 43. 
23. Compare with Cantu v. State, 738 S.W.2d 249, 251-52 (Tex. Cr. App. 1987) (showing
of several photospreads on different occasions, each with picture of the appellant, is suggestive when
the witness had not previously identified the appellant) (emphasis added). Here, Calloway had
previously identified the appellant in the first lineup. 
24. Id., at 43. 
25. Id., at 45. 
26. Id., at 46 (italics in original). 
27. Id., at 47. 
28. Id., at 48. 
29. Id., at 53 (citing to pages 182, 116, and 177 of the "Tr[anscript]," which is now called the
Clerk's Record; see Tex. R. App. P. 34.1).
30. Id., at 57. 
31. Id. 
32. Id.