**Opinion filed April 16, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-07-00243-CR

———————

## RODGER ATLAS DAVIS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CCCR-06-02842**

### M E M O R A N D U M   O P I N I O N

The jury found Rodger Atlas Davis[1] guilty of the capital murder of Alice Sue Allen and her ten-year-old son, Nathan. The State waived the death penalty, and Davis received an automatic life sentence. We affirm.

The evidence shows that Sue had been shot seven to eight times with a large caliber handgun. Nathan had been shot twice, once in the face and once in the chest, also with a large caliber handgun. There is no challenge to the sufficiency of the evidence. Davis's only complaint is that he received ineffective assistance of counsel from the lawyers who represented him at trial. Nevertheless, in

---

[1]While the indictment spells appellant's first name "Rodger," the judgment spells it "Roger."

order to properly consider Davis's ineffective assistance claim, we will review the evidence offered at trial.

Sue and Nathan had been living with Davis for about a year before they were killed. They had moved in with Davis as a financially convenient arrangement for Sue and Davis; they were not romantically involved at the time of the killings. It was the State's theory of the case that Sue had threatened to move out and was going to move from Davis's house when she got paid on the Monday following her murder. The State claimed that Davis committed the murders out of frustration and anger; Sue was moving, and Davis would be left with a serious financial problem.

Sue worked the night shift at a nursing home. She did not show up for work on Saturday night, May 20, 2006, as she was expected to do. Coworkers tried to telephone Sue, but the line was busy for four hours.

In the early morning hours of the following day, May 21, Davis called the 911 dispatcher for Comanche County Law Enforcement. He told the dispatcher that there were dead people in his house and that he did not know whether he was the one who had killed them, "but there's only me." Davis also told the dispatcher that there were dead people there and that he needed to die. Throughout the investigation and in his testimony at trial, Davis continually denied any knowledge of how Sue and Nathan died, but he assumed that he was the one who had murdered them.

Davis was on the phone with the dispatcher for about two and one-half hours. He was belligerent, cursing, and yelling and was threatening to kill himself also. Davis sounded intoxicated. He admitted that he had been drinking. There was testimony that Davis was usually intoxicated and normally spent his days drinking and watching movies. Several large, empty vodka bottles were found inside the house. During the two and one-half hours that he was talking to the dispatcher, Davis refused to allow law enforcement officers inside his house.

When Davis did finally let the officers inside, they found him sitting on a couch or love seat with a Ruger 9 mm handgun on the floor by his feet. All of the clips were on the couch; there was a single bullet in the pistol. The results of ballistics tests showed that bullets and casings found in Davis's house matched the Ruger 9 mm. Davis's DNA was found on the pistol.

The officers found Sue's and Nathan's bodies in a bedroom inside the house. Nathan was in the floor at the foot of the bed, under a television tray. Sue was "like in a defensive fetal position" in a corner. Sue and Nathan had been dead for sometime. Davis told the dispatcher that the people were "[d]ead, cold, dead."

2

In a single issue on appeal, Davis asks, "Did [Davis's] attorneys render ineffective assistance of counsel?"

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that his lawyer's performance fell below an objective standard of reasonableness and that there is a "reasonable probability" the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984); *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). When the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable. *Thompson*, 9 S.W.3d at 813. In order to defeat *Strickland*'s presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). We do not inquire into trial strategy unless no plausible basis exists for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771.

First, Davis says that trial counsel was ineffective because they failed to timely "push" the trial court for funds to hire an investigator and also failed to ask for a continuance so that the investigators could have more time to develop additional witnesses. The State counters that Davis has not shown that there were any other witnesses that an investigator could have discovered who would have changed the outcome of the case. We agree with the State. It was Davis's responsibility

3

to show that such witnesses existed and that their testimony would be of benefit to him. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). Furthermore, Davis has not shown that the investigators did not have a sufficient time to investigate this case or how additional time would have helped. Insofar as these arguments are contained within Davis's sole issue on appeal, they are overruled.

Sue was formerly married to Don Allen. Davis complains that his trial lawyers failed to offer any evidence about Don Allen's whereabouts or character in relation to the time of these killings. However, the record shows that Davis's trial lawyers requested that DNA tests be performed relating to Don Allen and Nathan's father Jay Wilson and compared to the DNA found on the murder weapon. Jay Wilson was in prison at the time of the murders, and Don Allen's DNA was not on the murder weapon. This argument is overruled.

We will group some of Davis's remaining arguments together. He claims that there is no indication that either his trial lawyers or his investigators tried to locate Sue's daughter's friends whom Davis thought had been stealing from him. The daughter had lived with Sue, Nathan, and Davis for a time. Davis also argues that there is no indication that neighbors, or others in the area at the time of the murders, were interviewed. He also contends that the record does not show that either his trial lawyers or his investigators interviewed bank personnel regarding Sue's having made an application for a loan from the bank so that she could either buy Davis's house or help him keep it.

Finally, Davis says that there is no indication that either his trial attorneys or his investigators interviewed witnesses in order to develop testimony about his character and work history in order to show that his character would be inconsistent with the motive for the murders as proposed by the State.

Davis's arguments in this group of alleged shortcomings of counsel are speculative. The record is silent as to whether his trial attorneys did these things. A silent record will not support an argument that his trial counsel or his investigators did or did not do those things about which he has complained. Davis had the burden to support the allegations of ineffective assistance of counsel; the State did not have the obligation to disprove them. *Thompson*, 9 S.W.3d at 813.

Moreover, the record shows that Pete Boutross and Rhonda Todd, both potential character witnesses for Davis, were interviewed in person or by phone, on Davis's behalf, a minimum of eighteen times. The record is silent as to why they were not called as witnesses. Boutross did testify

at the hearing on Davis's motion for new trial. He said that he had known Davis for some time, that Davis was capable of supporting himself, and that Davis's character was inconsistent with the mistreatment of women. This testimony, if it had been presented at trial, would have been inconsistent with the testimony Davis himself presented at his trial.

Regarding the bank loan, Weldon Bragg, a bank employee, testified at the hearing on the motion for new trial that he had no records to show that Sue had made an application to assume the debt on Davis's house; the only application that the bank had was one in 2005 to assist with the payment of property taxes on an unknown tract of real property. Davis testified at trial that the bank would not have had any such records.

Even if we were to hold that counsel had failed to do the things about which Davis complains in this portion of his argument, he has not met the second prong of *Strickland* that but for those omissions there was a reasonable probability that the outcome of this case would have been different. *Strickland*, 466 U.S. at 693-94. Insofar as these arguments are contained in Davis's sole issue, they are overruled.

Finally, Davis complains that his trial counsel failed to obtain scientific testing on his hair and on some of Sue's medication in order to determine whether he had involuntarily ingested some type of drug at the time of the murders. There is nothing in the record to show how such failure, if any, amounted to deficient performance by trial counsel. Davis has not shown what these tests would show and whether the results would be favorable to him. Nor is there any showing in the record of how the outcome of this case would have been different but for any failure of the trial counsel to obtain the test. Insofar as this argument is contained in Davis's sole issue, it is overruled. *See Strickland*, 466 U.S. at 693-94.

This record shows an extraordinary amount of trial preparation in research of the issues; preparation surrounding legal theories; and participation in extensive discovery, in filing and presenting numerous pertinent motions, in consultation with experts, in jury preparation, in conducting witness interviews (both the State's witnesses and potential defense witnesses), and in consultation and cooperation among all parties on Davis's defense team. Further, trial counsel was prepared to and did conduct vigorous examinations of the State's witnesses, including experts called by the State. Davis has failed to show that trial counsel provided him ineffective assistance of counsel, and his single issue on appeal is overruled.

The judgment of the trial court is affirmed.

JIM R. WRIGHT

CHIEF JUSTICE

April 16, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

6