In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00039-CV
______________________________


IN THE INTEREST OF A.M.M. 
AND A.M., CHILDREN
 


                                              

On Appeal from the 62nd Judicial District Court
Lamar County, Texas
Trial Court No. 71868


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Tonia McMikel appeals from a jury's verdict terminating her parental rights to A.M.M. and
A.M. She contends her case should be reversed due to several alleged errors: (1) the State's
improper use of the term "abortion"; (2) the trial court abused its discretion by refusing to allow her
to present evidence from material, undisclosed, witnesses; (3) the evidence was legally and factually
insufficient to support the judgment of termination; (4) the trial court erred by refusing to grant her
a directed verdict because the Texas Department of Protective and Regulatory Services'
(Department) failures in processing her case violated the Americans with Disabilities Act (A.D.A.);
(5) ineffective assistance of counsel; and (6) in denying McMikel a separate trial from her husband.
            We overrule the contentions of error and affirm the judgment of the trial court. 
Factual Background
            The record shows that McMikel is an alcoholic and that her blood alcohol level has been
measured on several occasions at lethal or near-lethal levels.


 Largely because of her alcoholic
episodes and secondarily because of claims of spousal abuse, the family, including McMikel, these
two children, and her husband, have been involved with the Department since May 2000. On one
occasion, immediately after giving birth to A.M., in late 2003, McMikel completed an alcohol
intervention program in Lufkin, and after sixty days was allowed to bring the children home. 
However, she was thereafter found drinking while the children were in day care, and they were
removed from the home March 11, 2004. 
            In the meantime, McMikel had been convicted in September 2001 for felony driving while
intoxicated (D.W.I.), a second time May 22, 2004, and a third time September 4, 2004, and also for
endangerment of a child for the incident at the park in September 2003. McMikel was sentenced to
four years in prison. Her sentence commenced in October 2004, and she was incarcerated at the time
of this proceeding. Between the birth of A.M.M. in October 1999, and A.M. in October 2004,
McMikel had a nineteenth-week miscarriage at home


 and delivered a premature baby that lived for
thirteen days. 
            During the five-year time period that McMikel and the Department were interacting,
McMikel was referred to various alcohol control programs. The results were, in some cases,
temporarily effective, but no lasting alteration in her behavior was ever apparent. 
Reference to "Abortion"
            McMikel first contends the termination should be reversed because on two occasions during
the trial, the Department's questions to her husband stated that McMikel had aborted the child at
home. 
Q.CPS was involved for the second time in January of 2002. Does that
sound about right?
 
A.Yes, sir.
 
Q.That was when your wife aborted a child at home?
 
A.Yes, sir, it was.
 
Q.Nineteen week old fetus at home.
 
A.Yes.
 
Q.She was intoxicated when that happened, correct?
 
A.I don't really know.
 
                        Q.Blood alcohol is .283?
 
[Wife's Counsel]:Objection. Use the term aborted. It [sic] was
absolutely no evidence from any source that the child was aborted. It was a
miscarriage.
 
[State]:Miscarriage.
 
[Wife's Counsel]:Talk about that, it's certainly improper and we
would ask for a Court instruction for the jury to disregard.
 
[Husband's Counsel]:We second that objection, Your Honor. 
Aborted clearly is implying that there is affirmative action taken on the part of the
person.
 
THE COURT:Okay. I'll let you rephrase the question.
 
Q.[State] I'll rephrase the question, sir. Your wife had a miscarriage of
a 19 week old child --

Three pages later in the record, counsel again "misspoke."
Q.[State] Do you know why she aborted, wanted a counselor to talk to
her about any of that? I'm sorry -- miscarriage.
 
                        A.        I know she had two miscarriages, you know.

                        [Wife's Counsel]:        Objection.

The trial court did not rule on this objection.
            At a recess, after the State passed the witness, in an extended discussion, counsel asked the
court for a mistrial based on the necessarily prejudicial nature of the State's suggestion—twice— that
McMikel had aborted the child. The trial court overruled the motion. 
            The first question is whether this contention has been preserved for our review. The
objection to the form of the question was not made until after two other exchanges had occurred. 
See Tex. R. App. P. 33.1(a)(1) (stating that, to preserve error for appeal, party must make timely and
sufficiently specific objection in trial court). To be timely means that the objection must be made,
if possible, before the evidence is admitted or, if not possible at that time, the objection must be
made as soon as the ground or grounds for the objection become apparent. Kerr-McGee Corp. v.
Helton, 134 S.W.3d 204, 208 (Tex. App.—Amarillo 2002, no pet.); Land v. State, 890 S.W.2d 229,
234 (Tex. App.—Beaumont 1994, no pet.). In this case, the objection was not made as soon as the
grounds for the objection became apparent, and it is thus arguable that the complaint was not
preserved for our review. 
            Further, McMikel did not obtain an explicit ruling on her request for an instruction to the
jury. The court instead allowed the State to rephrase the question, which it promptly did without
argument, to ask whether McMikel's husband was aware of the miscarriage. To be entitled to present
a complaint for appellate review, the record must show a timely objection and show that the trial
court ruled on the objection either expressly or implicitly. Tex. R. App. P. 33.1(a). Here, the court
did not rule on the objection, but asked counsel to rephrase the previous question. The fact that
McMikel did not object to this action by the court or request the trial court to take any further action
could reasonably be interpreted by the trial court that its action accomplished the purpose of
McMikel's objection and that McMikel was satisfied with the court's response to the objection. In
these circumstances, the trial court's action cannot be interpreted as an express or implicit adverse
ruling to McMikel's objection and, thus, any claim of error is waived. See Walton v. City of
Longview, 855 S.W.2d 875, 880 (Tex. App.—Tyler 1993, no writ). Even if the error was preserved,
we recognize that, in McMikel's medical records, which were also before the jury, the proper medical
term for a miscarriage of this nature was used—a "spontaneous abortion." Although the term
"abortion" is one that has negative connotations as the intentional termination of pregnancy, the
popular use of the term is not precisely correct. In medical terminology, the word "abortion" is
typically preceded by another word explaining the type of abortion involved, as in an abortion due
to infection, or to accident, or, as in this case, one that is spontaneous. Thus, while the use of the
word "abortion" alone may not have fully described the situation, it was not entirely inaccurate. See
Dorland's Illustrated Medical Dictionary 1988 (27th ed. 1988).


 
            The contention of error is overruled.
Exclusion of Witnesses
            McMikel next contends the court erred by refusing to permit her to call two witnesses, Bob
Bush and Ray Karrer, who were both connected with programs that would be available to her, and
who had visited with her during the weekend before jury selection—after she was returned to Lamar
County from prison. Bush and Karrer would have testified about the support programs available to
McMikel while in prison and after her release. McMikel did testify about the visits of those
witnesses and her anticipated use of the programs, but the court refused to allow Bush and Karrer
to testify. The State was not made aware of the witnesses until trial was underway, in the midst of
testimony by the next-to-last witness to be called by McMikel.
            Rule 193.6 of the Texas Rules of Civil Procedure requires that witnesses who are not timely
disclosed or identified be excluded unless either the party had good cause for not timely
supplementing discovery responses, or the failure to timely supplement will not "unfairly surprise
or unfairly prejudice the other parties." Tex. R. Civ. P. 193.6. McMikel argues only the first aspect
of this rule: that good cause existed for the failure to timely supplement the response. 
            In support of this position, McMikel points out that the witnesses were not able to meet
personally with her until she was returned to Lamar County the weekend before trial, the New Year's
holiday weekend. The jury was selected January 4, 2005, and the trial began January 5, 2005. 
            The State points out that McMikel had known about the individuals for some time, and had
known that she might call them as witnesses for at least a week before she actually attempted to offer
them January 10. McMikel argued that she had good cause to present Bush's and Karrer's testimony
because, contrary to the Department's arguments, Bush and Karrer would provide evidence that a
support group could be available for McMikel. The trial court overruled the request, and McMikel
made a bill summarizing their expected testimony.
            The trial court has discretion to determine whether the offering party has met its burden of
showing good cause. Aluminum Co. of Am. v. Bullock, 870 S.W.2d 2, 3 (Tex. 1994); Pilgrim's Pride
Corp. v. Smoak, 134 S.W.3d 880, 902 (Tex. App.—Texarkana 2004, pet. denied). The question is
whether the trial court abused that discretion by denying the request. In this case, the court was
confronted by two unexpected witnesses, five days into the trial. Even assuming that McMikel did
not have an opportunity to determine whether those individuals would testify until they had the
opportunity to talk with her, that conversation happened over a week before McMikel attempted to
call them. Under these circumstances, we cannot conclude the court abused its discretion by
determining that good cause was not shown for the delay in disclosure to the time when McMikel
attempted to call the witnesses. 
            The contention of error is overruled.
Sufficiency of the Evidence
            McMikel next contends, with no citation to any controlling authority, that the evidence is
legally and factually insufficient to support the verdict. She quotes the charge instructions and the
jury question, and then complains the evidence does not show that she "knowingly" committed the
actions complained of, due to her intoxication.
            McMikel parses her argument in this fashion—she first focuses on the evidence showing that
the Department closed its case on her two weeks after receiving assessment and recommendations
from its own expert on chemical dependency, Duane Cox—without the Department having ever
reviewed his assessments and recommendations with McMikel. McMikel contends that, because
of the Department's "non-effort," and Cox's criticism of the Department for its failures to attempt to
utilize the more stringent intervention methodology that he had recommended, the Department's
efforts were inadequate. McMikel then states there was evidence she had complied with a court
order (but without indicating which order was referenced, or what evidence to which she is referring)
establishing the actions necessary for her to obtain the return of the children. Finally, she concludes
by stating that there is no evidence she knowingly engaged in conduct that resulted in her conviction
and imprisonment for D.W.I. and endangering a child due to intoxication. 
            In the interest of justice, we will consider the argument so far as it can be reasonably
understood.


 
            Before a parent's right can be involuntarily terminated, the Department must prove by clear
and convincing evidence that (1) the parent has committed one of several enumerated acts, and
(2) termination is in the child's best interest. See Tex. Fam. Code Ann. §§ 161.001, 161.206(a)
(Vernon Supp. 2005). In reviewing the legal sufficiency of the evidence, we view all the evidence
in a light most favorable to the finding to determine whether a reasonable trier of fact could have
formed a firm belief or conviction that its findings were true. Tex. Fam. Code Ann. § 101.007
(Vernon 2002); J.F.C., 96 S.W.3d 256, 266 (Tex. 2002); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). 
If, in light of the entire record, the disputed evidence that a reasonable trier of fact could not have
credited in favor of the finding is so significant that a trier of fact could not reasonably have formed
a firm belief or conviction, then the evidence is factually insufficient. In re J.F.C., 96 S.W.3d at
266; In re L.C., 145 S.W.3d 790 (Tex. App.—Texarkana 2004, no pet.).
            Because McMikel has not argued that the evidence is legally and factually insufficient to
support the second prong of the test, we address only the first prong. She has also made no effort
to apply her evidentiary contention to any of the individual bases set out in the charge that would
justify termination.
            In this case, there is evidence that in May 2000, the Department was involved in an incident
where the husband was called home from work because McMikel had lost use of one side of her
body, and was shown to have a .22 blood alcohol level. In July, a domestic altercation erupted in
which police were involved—McMikel was also intoxicated at that time. She was directed to
participate in services offered by the Department, which she did until April 21, 2001, when, because
there were no other incidents, the Department ended its intervention. However, in September 2001,
McMikel rear-ended another car while driving and was hospitalized with a measured blood alcohol
level of .63. There was evidence that, at one point, she drank a fifth of vodka while shopping for
groceries and that she had a miscarriage January 20, 2002—she was hospitalized again with a blood
alcohol level of .283 and referred to another alcohol and drug abuse service. She refused that
service. 
            The testimony shows that McMikel admitted driving while intoxicated with A.M.M. in the
car. She was again hospitalized January 25, 2003, with a blood alcohol level of .43. McMikel was
arrested for public intoxication May 1, 2003, and was intoxicated at the city pool May 30, 2003, 
while A.M.M. was with her. Finally, she took A.M.M. to Wade Park September 17, 2003, and while
the three-year-old was playing in the park, McMikel passed out in the car, leaving A.M.M.
unattended. At the time, McMikel was eight months pregnant and was hospitalized with a blood
alcohol level of .44. 
            After A.M. was born, McMikel was placed in and completed another program, and was
allowed to come home with both children after about sixty days, apparently in early January 2004.
She was again found to be intoxicated while the children were in day care, and the children were
removed March 11, 2004. 
            McMikel admitted that she had been convicted of three felony D.W.I. charges and one charge
of endangering a child. Her husband testified he knew she drank a lot and had passed out while
alone with A.M.M. on several occasions.
            We also note there is evidence that her husband was an enabler who resisted her participation
in the services offered, and there was some evidence the husband was responsible for domestic
violence against her. 
            We need go no further in our analysis than Section 161.001(1)(D) of the Texas Family Code. 
Grounds for termination are established if there is clear and convincing proof that the parent has
knowingly allowed the child to remain in surroundings or conditions that endanger the child's
physical or emotional well-being. In this case, it is apparent from a multi-year course of conduct,
interrupted by brief periods of sobriety, that McMikel was addicted to alcohol to such an extent that
she was unable to care for her own infant children.
            Repeated instances of D.W.I., intoxication to the point of lethality and coma, and passing
out at a city park while her child played without other supervision provide legally and factually
sufficient evidence, even without reference to the remaining allegations by the State, to support this
verdict. This pattern of conduct has continued for several years, and the best interests of the children
require termination of the parental rights of McMikel, as she has demonstrated she is incapable of
caring for them.
            The contention of error is overruled.
Violation of the A.D.A.
            McMikel next contends the services offered by the Department were so insufficient as to
violate the A.D.A. See 42 U.S.C.A. §§ 12101–12113 (West 2005). McMikel argues no specific
violation, and cites to no particular portion of the statute which would apply in this instance. We
have been directed to three Texas cases by counsel, which he argues reflects a split of authority about
the proposition that an A.D.A. violation is a defense in a termination proceeding. In the first case,
the Houston First District Court found that an A.D.A. claim was not preserved for its review because
counsel did not plead, prove, or obtain findings on that contention. In re C.M., 996 S.W.2d 269, 270
(Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing Tex. R. Civ. P. 94). In the second case, the
Fort Worth court merely cited C.M. for the underlying concept of preservation of error and did not
address the A.D.A. in any respect. In re J.M.M., 80 S.W.3d 232 (Tex. App.—Fort Worth 2002, pet.
denied). The Beaumont court addressed the issue of whether the A.D.A. was available as an
affirmative defense, and, in agreement with a number of other jurisdictions, declined to create such
a defense. In re S.G.S., 130 S.W.3d 223 (Tex. App.—Beaumont 2004, no pet.).
            This case is in much the same procedural posture as C.M. McMikel did not plead or prove
a violation of the A.D.A., and it was raised for the first time in a motion for directed verdict. 
McMikel argues that the court was, under the evidence, required to grant her motion. The issue has
not been preserved for our review. See Tex. R. Civ. P. 94; Tex. R. App. P. 33.1; see In re B.L.D.,
113 S.W.3d 340, 349 (Tex. 2003). Even if not waived, there is no authority that such a defense
could be properly raised in a proceeding of this nature, and in the context of this case as presented
to this Court, we decline to reach such a conclusion. 
            The contention is overruled.



Claim of Ineffective Assistance of Counsel
            McMikel next contends her counsel was ineffective because the Department and trial court
delayed appointing counsel until June 28, 2004. McMikel states that counsel was not appointed until
a month after the Department had decided to seek termination and argues that this necessarily caused
counsel to be ineffective. McMikel further states the Department had also decided to seek adoption
by the foster family, although there is no showing of how this is relevant to the analysis. 
            Section 107.013(a)(1) of the Texas Family Code requires the trial court to appoint counsel
to represent an indigent parent of the child who responds in opposition to the termination. Tex.
Fam. Code Ann. § 107.013(a)(1) (Vernon Supp. 2005). The record shows that, in this instance,
McMikel hired an attorney in October 2003, who was allowed to withdraw March 15, 2004. Trial
counsel was appointed June 28, 2004, and trial was eventually held in early January 2005. 
            The statutory right to counsel in parental rights termination cases embodies the right to
effective counsel. See In re M.S., 115 S.W.3d 534, 544 (Tex. 2003). The Texas Supreme Court
adopted the test set out in Strickland v. Washington, 466 U.S. 668, 674 (1984), as the standard for
ineffective assistance in civil parental termination proceedings. To prevail on this claim, an 
appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation
fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced
his or her defense. Id. at 687.
            Thus, to meet this burden, an appellant must prove that the attorney's representation fell
below the standard of prevailing professional norms and that there is a reasonable probability that,
but for the attorney's deficiency, the result of the trial would have been different. Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's
representation so undermined the proper functioning of the adversarial process that the trial cannot
be relied on as having produced a just result. Strickland, 466 U.S. at 686. 
            Although we do not believe, especially in light of the nature of this type of proceeding, that
the court should delay in appointing counsel, McMikel has suggested no way in which the
three-month time period she was without counsel in this case was harmful. Effectiveness of counsel
is not measured merely by the date of appointment of counsel, but by the impact of the appointment
and counsel's actions thereafter. Error has not been shown, and no argument has been presented that
persuades us any harm existed in this case. 
            The contention of error is overruled.
Joint Trial with Husband
            McMikel next complains that her termination proceeding was defective because it was
combined with that of her husband—during the midst of their divorce proceeding. McMikel
acknowledges there is no authority to support her assertion that she should have been afforded a
separate termination trial, but argues that, because she was placed in the position of being sided with
a man she was suing for divorce, who had abandoned her, and who had committed family violence
against her, her request should have been granted.
            The Department correctly notes there is no indication of a ruling on the motion.


 As a
prerequisite to presenting a complaint for appellate review, the record must show a timely request
or objection and either an express or implicit ruling by the trial court. Tex. R. App. P. 33.1. We
have no record that the trial court ruled on this request for separate trials and, therefore, the request
was waived. 
            Even if the alleged error had been preserved, under the record before us, the trial court did
not abuse its discretion in denying separate trials. Rule 174(b) of the Texas Rules of Civil Procedure
allows a court to order a separate trial "in furtherance of convenience or to avoid prejudice." Tex.
R. Civ. P. 174(b). The court's decision is reviewed for abuse of discretion. Tarrant Reg'l Water
Dist. v. Gragg, 151 S.W.3d 546, 556 (Tex. 2004); Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677,
683 (1956). 
            The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court's action; rather, it is a question of whether the court
acted without reference to any guiding rules or principles, and the mere fact that a trial court may
decide a matter within its discretionary authority differently than an appellate court does not
demonstrate such an abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985).
            In this case, even though the husband and wife were (according to McMikel's brief) at odds,
the facts and allegations were intertwined, and the proof provided by the Department to support
termination was such as to, in any event, require nearly identical trials. McMikel has directed us to
nothing in the record that shows any particular unfairly prejudicial attitude, behavior, or testimony
that would not have been admissible even at a separate trial. 
            Under these facts, we find no abuse of discretion by the trial court in denying the motion for
separate trials.
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          November 28, 2005
Date Decided:             January 10, 2006