IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00410-CV

 

Louis Lovett,

                                                                                    Appellant

 v.

 

Peter Lovett,

                                                                                    Appellee

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 04-00-13783-CV

 



dissenting Opinion










 

            It may be time for the Supreme Court
to again look at what courts of appeals are doing with the scope and
application of the partial performance doctrine, a type of equitable estoppel,
as an exception to the application of the statute of frauds.  I recognize this
is not a perfect case for that analysis and may get passed over for
discretionary review, but I could not let a decision on the issue leave this
Court without drawing attention to the problem so that, if not this case, when
the right case is presented to resolve the issue, this case will be included in
the framework and history of the problem to assist the Court in crafting an
appropriate resolution.[1]

Statute of Frauds

            The appellant, Louis, asks us to ignore
the statute of frauds.  Tex. Bus. &
Com. Code Ann. § 26.01 (Vernon Supp. Pamp. 2007).[2] 
The majority agrees to do so, purportedly on the basis of the venerable Hooks
v. Bridgewater decision and its progeny.  Hooks v. Bridgewater, 229
S.W. 1114 (Tex. 1921).  That decision applied a judicial exception to the
application of the statute of frauds.  If the facts of this case as described by
the majority authorize an exception to the statute of frauds, the exception has
swallowed the rule.  By avoiding the statute of frauds in this case an oral
agreement for the transfer of real estate that has allegedly been partially performed
by the buyer will be enforced.  If money changing hands based on an oral
promise to convey real estate is all that is necessary to show fraud on the
buyer to circumvent the statute of frauds, I contend we no longer have the
protection of the statute of frauds.[3]

Review of Law and Facts

            Upon the same legal authorities and
standard of review cited by the majority, I do not find that Louis has brought
himself within the exception to the statute of frauds referred to by the
majority as partial performance.  Specifically, the majority concludes that
Louis’s evidence is “that Peter received more than $25,000 which will
constitute an ‘unearned benefit’ if he is permitted to retain it without
relinquishing title to the property.  Peter contends that he is in rightful
possession of these funds as rental payments.”  Maj. Op., pg. 8.

            On these facts, I would have easily
concluded, as the trial court did, that Peter was entitled to summary
judgment.  Here is the critical test from the authority quoted by the majority:

The acts of performance relied upon to take a
parol contract out of the statute of frauds must be such as could have been
done with no other design than to fulfill the particular agreement sought to be
enforced; otherwise, they do not tend to prove the existence of the parol
agreement relied upon by the plaintiff.

 

Maj. Op., pg. 6.

            The only acts relied upon by Louis to
take the contract he alleges he made out of the application of the statute of
frauds is the payment of money.[4] 
Under Louis’s theory, this was purchase money.  Under Peter’s theory, this was
rent money.  These payments thus fail the test quoted above – to be the type
act that could have been done with no other purpose than to fulfill the
purchase agreement Louis contends he made with Peter.[5]

            If this type of payment is all it
takes to avoid the protection of the statute of frauds, every landlord should
be very concerned that any long term tenant will argue:  those were not rent payments;
they were purchase money payments for the purchase of the property I was
occupying.

            In the final analysis, we either have
the protection of a statute of frauds to prevent testimony about oral
agreements to convey real property or we do not have that protection.  If what
Louis has presented qualifies as evidence of an equitable exception to the
statute of frauds, the protection has been reduced to a toothless tiger of
little use in the efficient resolution of the high cost of litigating real
estate disputes.  I note that if Louis is the one who is misrepresenting the
terms of the parties’s agreement and loses at trial, he still received a place
to live for a number of years.  But if the jury accepts his misrepresentation,
not only did he get to live there for a number of years, he now gets a deed to
the property!

            I think this is precisely the type of
effort to enforce an alleged oral agreement to convey real property that the
statute of frauds was designed to avoid.  The legislature made the decision
that, notwithstanding that some victims of fraud would be deprived a legal
remedy, certainty in transactions involving the conveyance of real property was
more important for the public.  Only by the application of the statute of
frauds can persons avoid protracted litigation over alleged oral agreements to
convey real property.

            In summary, where is the protection
for Peter to be able to avoid this type litigation?  Peter must have a written
agreement that Louis’s occupancy is no more than as a tenant at will; but wait,
a written agreement is the type of protection you are supposed to need if the
agreement is to convey property, not rent it month to month.  Yes, I believe
the exception as applied in this proceeding has swallowed a large part of the
rule.

            I respectfully dissent.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Dissenting
opinion delivered and filed March 19, 2008









[1]  This case presents formidable issues for Louis
beyond this appeal.  The opinion of the Court does not address the statute of
limitations, another ground on which summary judgment may have been granted,
nor the sufficiency of the legal description necessary to enforce a conveyance
of real property.  I can see several other dispositive grounds but understand
and agree with the trial court’s decision to grant summary judgment on the
statute of frauds based upon the facts as presented by the majority.

 





[2] 
§ 26.01.  Promise or Agreement Must Be in
Writing 

   (a) A promise or agreement described in Subsection (b) of this
section is not enforceable unless the promise or agreement, or a memorandum of
it, is

                   (1) in writing; and

                   (2) signed by the person to be charged with the
promise or agreement or by someone lawfully

                    authorized to sign for him.

   (b) Subsection (a) of this section applies to:

                   (4) a contract for the sale of real estate
. . . .

 





[3]  I agree with Peter that it is undisputed the
first two elements of Hooks v. Bridgewater collateral estoppel have been
met – payment of consideration and entry into possession.  In a nutshell, the
question is whether the evidence of the first element, payment of
consideration, also meets the third element.  Since no permanent and valuable
improvements were made to the property with the consent of Peter, Louis must
rely upon other facts demonstrating the buyer would be defrauded if the
agreement is not enforced.

 





[4]  The act of moving onto the property is
undisputed.  Louis cannot use the traditional Hooks v. Bridgewater
elements because he does not assert or attempt to establish by summary judgment
proof that he made valuable improvements to the property; thus, he must show
some other facts that would constitute a fraud on him.  I contend that payment,
alone,  is not adequate to meet this sub-element to show fraud, thus avoiding
the application of the statute of frauds.





[5]  As to the unsigned memo relied upon so strongly
by Louis as evidence of something, there are many problems.  Not only does it
fail as a memorandum because it is unsigned, the timing of its preparation is
not established, who prepared it is not established, for what purpose it was
prepared is not established, and it is as supportive of Peter’s position that
this was not a memorandum of sale as it is of Louis’s explanation that this is
how they were going to share expenses if they entered into a joint venture,
something both of them agree they did not do.








0 S.W.3d 557, 563 (Tex. Crim. App.
2008).  We cannot say that
the trial court abused its discretion in overruling the relevance objection. 
And because no objection was made to the criminal mischief evidence, Hemphill
cannot complain on appeal that the trial court abused its discretion.

The fourth instance is a charge of arson
against Hemphill concerning the burning of a home by Hemphill, Powell, and some
of the others involved with Powell, which Hemphill denied, although he admitted
he had thought about burning the victim’s vehicle.  Defense counsel objected to
relevance twice during this line of questioning and the trial court sustained
both objections, but the vast majority of Hemphill’s testimony about the arson
was not objected to, including testimony that Hemphill had been charged with
arson.  Accordingly, it has not been preserved for appellate review.

The fifth extraneous-offense episode
concerns Hemphill’s alleged acts of violence toward jailers during his pretrial
incarceration.  Because no objection was made to this testimony, Hemphill’s
complaint has not been preserved for appellate review.  We overrule Hemphill’s
first issue.

Hemphill’s second issue on ineffective
assistance complains about his trial counsel’s above-noted failures to object
to extraneous-offense evidence.  To
prevail on an ineffective
assistance of counsel claim,
a defendant must first show that his counsel’s performance was deficient.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
(1984); see Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).  It must also be shown that the deficient performance prejudiced the
defendant.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions fell
within the wide range of reasonable and professional assistance.  Mallett v.
State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under normal circumstances, the record
on direct appeal will not be sufficient to show that counsel’s representation was
so deficient and so lacking in tactical or strategic decision-making as to
overcome the presumption that counsel’s conduct was reasonable and
professional.  See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Mitchell, 68 S.W.3d at 642.  Rarely will the trial record
contain sufficient information to permit a reviewing court to fairly evaluate
the merits of such a serious allegation:  “[i]n the majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.”  Thompson v. State, 9 S.W.3d 808, 813-14
(Tex. Crim. App. 1999); see also Mitchell, 68 S.W.3d at 642 (“The
reasonableness of counsel’s choices often involves facts that do not appear in
the appellate record.”).

            In the absence of evidence
of trial counsel’s reason for the challenged conduct, we assume a strategic
reason for trial counsel’s conduct, if one can be imagined.  Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (“an appellate court
‘commonly will assume a strategic motivation if any can possibly be imagined,’
and will not conclude the challenged conduct constituted deficient performance
unless the conduct was so outrageous that no competent attorney would have
engaged in it”) (quoting 3 W. Lafave, et
al., Criminal Procedure § 11.10(c) (2d ed. 1999) and citing Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)).  But, if nothing in
the record reveals trial counsel’s reason, it is improper for us to speculate
on it.  See Thompson, 9 S.W.3d at 814.

We have a silent record on why
Hemphill’s attorney did not object to most of the extraneous-offense evidence. 
Because the appellate
record in this case does not evidence the reasons for trial counsel’s conduct, and
because these alleged deficiencies could have been the subject of trial
strategy not revealed by the record, we overrule Hemphill’s second issue.  See
Jones v. State, 170 S.W.3d 772, 776 (Tex. App.—Waco 2005, pet. ref’d).

            Having
overruled Hemphill’s two issues,
we affirm the trial court’s
judgment.

 

 

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray concurs in the
judgment to the extent it affirms the trial court’s judgment.  He does not join
the opinion.  A separate opinion will not issue.  He notes, however, that the
statement for which Turner v. State is cited on page 5 of the opinion is
an overstatement of its holding.  A defendant does not open the door to the
introduction of extraneous offenses by not testifying about them.  This
is not how Hemphill opened the door.  As the court notes, it was the nature of
the defense that opened the door to the introduction of this evidence.)

Affirmed

Opinion
delivered and filed October 28, 2009

Do
not publish

[CRPM]









[1] Section 8.05 of the
Penal Code provides in part:

(a) It is an
affirmative defense to prosecution that the actor engaged in the proscribed
conduct because he was compelled to do so by threat of imminent death or
serious bodily injury to himself or another.

…

(c) Compulsion within
the meaning of this section exists only if the force or threat of force would
render a person of reasonable firmness incapable of resisting the pressure.

(d) The defense
provided by this section is unavailable if the actor intentionally, knowingly,
or recklessly placed himself in a situation in which it was probable that he
would be subjected to compulsion.

Tex. Pen. Code Ann. § 8.05 (Vernon 2003).