Opinion filed April 16, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed April 16,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00243-CR

                                                       ________

 

                                  RODGER
ATLAS DAVIS, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 220th District Court

 

                                                      Comanche
County, Texas

 

                                          Trial
Court Cause No. CCCR-06-02842

 



 

                                             M
E M O R A N D U M   O P I N I O N 

The
jury found Rodger Atlas Davis[1] guilty of the
capital murder of Alice Sue Allen and her ten-year-old son, Nathan.  The State
waived the death penalty, and Davis received an automatic life sentence.  We
affirm.








The
evidence shows that Sue had been shot seven to eight times with a large caliber
handgun.  Nathan had been shot twice, once in the face and once in the chest,
also with a large caliber handgun.  There is no challenge to the sufficiency of
the evidence.  Davis=s
only complaint is that he received ineffective assistance of counsel from the
lawyers who represented him at trial.  Nevertheless, in order to properly
consider Davis=s
ineffective assistance claim, we will review the evidence offered at trial.

Sue
and Nathan had been living with Davis for about a year before they were
killed.  They had moved in with Davis as a financially convenient arrangement
for Sue and Davis; they were not romantically involved at the time of the
killings.  It was the State=s
theory of the case that Sue had threatened to move out and was going to move
from Davis=s house
when she got paid on the Monday following her murder.  The State claimed that
Davis committed the murders out of frustration and anger; Sue was moving, and
Davis would be left with a serious financial problem.

Sue
worked the night shift at a nursing home.  She did not show up for work on
Saturday night, May 20, 2006, as she was expected to do.  Coworkers tried to
telephone Sue, but the line was busy for four hours.

In
the early morning hours of the following day, May 21, Davis called the 911
dispatcher for Comanche County Law Enforcement.  He told the dispatcher that
there were dead people in his house and that he did not know whether he was the
one who had killed them, Abut
there=s only me.@  Davis also told the
dispatcher that there were dead people there and that he needed to die. 
Throughout the investigation and in his testimony at trial, Davis continually
denied any knowledge of how Sue and Nathan died, but he assumed that he was the
one who had murdered them.

Davis
was on the phone with the dispatcher for about two and one-half hours.  He was
belligerent, cursing, and yelling and was threatening to kill himself also. 
Davis sounded intoxicated.  He admitted that he had been drinking.  There was
testimony that Davis was usually intoxicated and normally spent his days
drinking and watching movies.  Several large, empty vodka bottles were found
inside the house.  During the two and one-half hours that he was talking to the
dispatcher, Davis refused to allow law enforcement officers inside his house.

When
Davis did finally let the officers inside, they found him sitting on a couch or
love seat with a Ruger 9 mm handgun on the floor by his feet.  All of the clips
were on the couch; there was a single bullet in the pistol.  The results of
ballistics tests showed that bullets and casings found in Davis=s house matched the Ruger 9
mm.  Davis=s DNA was
found on the pistol.

The
officers found Sue=s
and Nathan=s bodies in
a bedroom inside the house.  Nathan was in the floor at the foot of the bed,
under a television tray.  Sue was Alike
in a defensive fetal position@
in a corner.  Sue and Nathan had been dead for sometime.  Davis told the
dispatcher that the people were A[d]ead,
cold, dead.@








In
a single issue on appeal, Davis asks, ADid
[Davis=s] attorneys
render ineffective assistance of counsel?@

To
prevail on a claim of ineffective assistance of counsel, an appellant must
establish that his lawyer=s
performance fell below an objective standard of reasonableness and that there
is a Areasonable
probability@ the
result of the proceeding would have been different but for counsel=s deficient performance.  Strickland
v. Washington, 466 U.S. 668, 693-94 (1984); Mallett v. State, 65
S.W.3d 59, 62-63 (Tex. Crim. App. 2001).  A reasonable probability is a
probability sufficient to undermine confidence in the outcome of the trial.  Hernandez
v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  The purpose of this
two-pronged test is to judge whether counsel=s
conduct so compromised the proper functioning of the adversarial process that
the trial cannot be said to have produced a reliable result.  Thompson v.
State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The
review of defense counsel=s
representation is highly deferential and presumes that counsel=s actions fell within a
wide range of reasonable professional assistance.  Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000).  Appellant must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.  Jackson v. State, 877 S.W.2d 768 (Tex.
Crim. App. 1994); Hayden v. State, 155 S.W.3d 640, 648 (Tex. App.C Eastland 2005, pet. ref=d).  When the record is
silent on the motivations underlying counsel=s
tactical decisions, the appellant usually cannot overcome the strong
presumption that counsel=s
conduct was reasonable.  Thompson, 9 S.W.3d  at 813.  In order to defeat
Strickland=s
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.@ 
Id. at 814 (quoting McFarland v. State, 928 S.W.2d 482, 500 (Tex.
Crim. App. 1996)).  We do not inquire into trial strategy unless no plausible
basis exists for trial counsel=s
actions.  Johnson v. State, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981). 
When the record contains no evidence of the reasoning behind trial counsel=s actions, we cannot
conclude that counsel=s
performance was deficient.  Jackson,  877 S.W.2d at 771.








First,
Davis says that trial counsel was ineffective because they failed to timely Apush@ the trial court for funds to hire an
investigator and also failed to ask for a continuance so that the investigators
could have more time to develop additional witnesses.  The State counters that
Davis has not shown that there were any other witnesses that an investigator
could have discovered who would have changed the outcome of the case.  We agree
with the State.  It was Davis=s
responsibility to show that such witnesses existed and that their testimony
would be of benefit to him.  King v. State, 649 S.W.2d 42, 44 (Tex.
Crim. App. 1983).  Furthermore, Davis has not shown that the investigators did
not have a sufficient time to investigate this case or how additional time
would have helped.  Insofar as these arguments are contained within Davis=s sole issue on appeal,
they are overruled.

Sue
was formerly married to Don Allen.  Davis complains that his trial lawyers
failed to offer any evidence about Don Allen=s
whereabouts or character in relation to the time of these killings.  However,
the record shows that Davis=s
trial lawyers requested that DNA tests be performed relating to Don Allen and
Nathan=s father Jay
Wilson and compared to the DNA found on the murder weapon.  Jay Wilson was in
prison at the time of the murders, and Don Allen=s
DNA was not on the murder weapon.  This argument is overruled.

We
will group some of Davis=s
remaining arguments together.  He claims that there is no indication that
either his trial lawyers or his investigators tried to locate Sue=s daughter=s friends whom Davis
thought had been stealing from him.  The daughter had lived with Sue, Nathan,
and Davis for a time.  Davis also argues that there is no indication that
neighbors, or others in the area at the time of the murders, were interviewed. 
He also contends that the record does not show that either his trial lawyers or
his investigators interviewed bank personnel regarding Sue=s having made an
application for a loan from the bank so that she could either buy Davis=s house or help him keep
it.

Finally,
Davis says that there is no indication that either his trial attorneys or his
investigators interviewed witnesses in order to develop testimony about his
character and work history in order to show that his character would be
inconsistent with the motive for the murders as proposed by the State.

Davis=s arguments in this group
of alleged shortcomings of counsel are speculative.  The record is silent as to
whether his trial attorneys did these things.  A silent record will not support
an argument that his trial counsel or his investigators did or did not do those
things about which he has complained.  Davis had the burden to support the
allegations of ineffective assistance of counsel; the State did not have the
obligation to disprove them.  Thompson, 9 S.W.3d at 813.








Moreover,
the record shows that Pete Boutross and Rhonda Todd, both potential character
witnesses for Davis, were interviewed in person or by phone, on Davis=s behalf, a minimum of
eighteen times.  The record is silent as to why they were not called as
witnesses.  Boutross did testify at the hearing on Davis=s motion for new trial.  He said that he had
known Davis for some time, that Davis was capable of supporting himself, and
that Davis=s character
was inconsistent with the mistreatment of women.  This testimony, if it had
been presented at trial, would have been inconsistent with the testimony Davis
himself presented at his trial.

Regarding
the bank loan, Weldon Bragg, a bank employee, testified at the hearing on the
motion for new trial that he had no records to show that Sue had made an
application to assume the debt on Davis=s
house; the only application that the bank had was one in 2005 to assist with
the payment of property taxes on an unknown tract of real property.  Davis
testified at trial that the bank would not have had any such records.

Even
if we were to hold that counsel had failed to do the things about which Davis
complains in this portion of his argument, he has not met the second prong of Strickland
that but for those omissions there was a reasonable probability that the
outcome of this case would have been different.  Strickland, 466 U.S. at
693-94.  Insofar as these arguments are contained in Davis=s sole issue, they are
overruled.

Finally,
Davis complains that his trial counsel failed to obtain scientific testing on
his hair and on some of Sue=s
medication in order to determine whether he had involuntarily ingested some
type of drug at the time of the murders.  There is nothing in the record to
show how such failure, if any, amounted to deficient performance by trial
counsel.  Davis has not shown what these tests would show and whether the results
would be favorable to him.  Nor is there any showing in the record of how the
outcome of this case would have been different but for any failure of the trial
counsel to obtain the test.  Insofar as this argument is contained in Davis=s sole issue, it is
overruled.  See Strickland, 466 U.S. at 693-94.

This
record shows an extraordinary amount of trial preparation in research of the
issues; preparation surrounding legal theories; and participation in extensive
discovery, in filing and presenting numerous pertinent motions, in consultation
with experts, in jury preparation, in conducting witness interviews (both the
State=s witnesses and
potential defense witnesses), and in consultation and cooperation among all
parties on Davis=s
defense team.  Further, trial counsel was prepared to and did conduct vigorous
examinations of the State=s
witnesses, including experts called by the State.      Davis has failed to show
that trial counsel provided him ineffective assistance of counsel, and his
single issue on appeal is overruled.

 








The
judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

April 16, 2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.

 









[1]While the indictment spells appellant=s first name ARodger,@ the judgment spells it ARoger.@