# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00020-CR

**Robert Aaron Franz, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
## NO. 65578, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Robert Aaron Franz pleaded guilty to the charge of injury to a child and the trial court assessed sentence at thirty years in prison. Franz asserts on appeal that his trial counsel rendered ineffective assistance by failing to hire a medical expert to assess causation of the child's injuries. He contends that the hiring of the expert would have made him aware of facts that would have caused him not to plead guilty. We will affirm the judgment.

Franz undisputedly was alone with his twin eight-month-old daughters and another young child for three hours when one of the twins was seriously injured. When the girls' mother returned home from running errands, the child was limp and not breathing. Franz told the girls' mother that the child had been in the crib the whole time and that he did not know what had happened. The child suffered brain bleeding and swelling that caused mental and physical deficits that will likely persist for the rest of her life. The examining doctor concluded that the injury was

caused by a traumatic event. Eventually, Franz told police in a signed statement that the child wiggled out of his grasp and fell, landing on his steel-toe boot head-first. He said he then picked her up and started to run, but tripped over a box. To avoid landing on the child, he said, he threw her and she rolled into the living room. At the trial court, Franz supplied a signed judicial confession, in which he stated consistent with the indictment that he

> did then and there intentionally and knowingly cause serious bodily injury to [A.F.], a child younger than 15 years of age, by striking the said [A.F.] with the defendant's hands and by kicking the said [A.F.] with defendant's foot and by causing the head of [A.F.] to strike the floor or an object unknown to the grand jury and by causing an object unknown to the grand jury to strike and impact the head of the said [A.F.] and the defendant did then and there use or exhibit a deadly weapon, to wit: his hands and his foot and the floor or an object unknown to the grand jury . . . .

After hearing testimony from the child's mother, as well as from Franz's father and aunt, the trial court assessed the maximum prison term available under the plea bargain.

Franz then obtained new counsel who filed a motion for new trial, urging that previous counsel should have hired an expert to investigate the cause of the child's injury. He focuses on the following passage from a medical report describing the child's treatment at the hospital as the keystone to showing prior counsel's deficient performance: "Differential includes shearing forces from back-and-forth head motion, a fall from a 2-story height, motor vehicle accident with ejection, or blood dyscrasia." The parties agree that blood dyscrasia in this context means a tendency to bleed more freely than normal. Franz contends that this passage from the report means that the child's injuries might have been more due to a tendency to bleed excessively rather

than any action by Franz and that trial counsel should have hired an expert to explain this passage in the report.

To show deprivation of the right to reasonably effective counsel, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). To show deficient performance under *Strickland*, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *See* 466 U.S. at 688. The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To overcome the presumption of reasonable professional assistance, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In a plea-bargain case, the defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Ex parte Briggs*, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005). That assessment that will depend in large part upon a prediction whether the evidence likely would have changed the outcome of a trial. *Id.*

In *Briggs*, the court of criminal appeals granted relief on a petition for habeas corpus, concluding that the attorney's failure to obtain an expert witness constituted ineffective assistance of counsel that affected the result of the prosecution. Briggs pleaded guilty to injuring her child. *Id.*

3

at 460. The child had a short, difficult life. He was born with a congenital defect that caused urine to back up into a kidney and prompt an infection. *Id.* at 461. He was then involved in an automobile accident while his car seat incorrectly faced forward. He suffered breathing difficulties any time he was held in a position that brought his abdominal organs toward his chest—e.g. when his mother changed his diaper or hugged him. *Id.* When he was two months old, Briggs found the child blue and limp, though he had a pulse. She called 911 and performed cardiopulminary respiration until emergency medical technicians arrived, intubated him, and transported him to a hospital. Emergency room personnel reintubated him, incorrectly running the tube into his stomach rather than his lungs. By the time the error was discovered, the child's brain had died. *Id*.

Briggs's retained attorney reviewed the records, discussed weaknesses in the case with Briggs, and asserted that he needed $2,500 to $7,500 additional fees to retain the necessary experts. *Id.* at 462. After being paid $10,400 of his $15,000 fee, Briggs's attorney declared that he would withdraw from representation. Instead, Briggs pleaded guilty. *Id.* at 463. Experts hired by habeas counsel provided affidavits declaring that the child's medical records indicated no child abuse and multiple other causes of injury and death, including an undiagnosed birth defect. *Id.* at 462. The court of criminal appeals concluded that the medical records trial counsel obtained should have prompted further investigation and wrote, "There is no suggestion that trial counsel declined to fully investigate Daniel's medical records because he made a strategic decision that such an investigation was unnecessary or likely to be fruitless or counterproductive." *Id.* at 467.[1] Instead,

---

[1] The court of criminal appeals set out retained trial counsel's options when a client needs, but cannot pay for, experts:

4

he stopped investigating solely for financial reasons. *Id.* at 470. The court found counsel's performance deficient and further held that, had Briggs obtained the necessary expert review, she likely would not have pleaded guilty and a jury "highly likely" would have found her not guilty. *Id.* at 470. This undermining of confidence in the outcome of the original trial caused the court of criminal appeals to vacate Briggs's conviction. *Id.*

The record in this case does not similarly persuade us that Franz's counsel was ineffective. Where *Briggs* had evidence discrediting the evidence used to show her guilt (child's facial bruising caused not by abuse, but by medical tape and tubing, *id.* at 462) and showing other causes of death (birth defect and ER providing oxygen to his stomach, not his lungs, *id*. at 461), Franz has seized on the "diagnosis" of blood dyscrasia as a possible alternate explanation that merited exploration. We find no such definitive diagnosis in the record. Blood dyscrasia is one of three items listed in a sentence discussing "differential" in an "assessment and plan" section of the record of the child's hospital examination, but there is no testimony regarding the meaning of this list. In context, the list appears to be events that theoretically could cause the conditions observed.

---

1. Subpoena the doctors who treated Daniel during his life to testify at trial. Introduce the medical records through the treating doctors and elicit their expert opinions;

2. If the applicant could not pay for experts, withdraw from the case, explaining to the trial court that applicant was now indigent, prove that indigency, and request appointment of new counsel; or

3. Remain as counsel with the payment of a reduced fee, but request investigatory and expert witness fees from the trial court for a now-indigent client.

*Ex parte Briggs*, 187 S.W.2d 458, 468 (Tex. Crim. App. 2005).

If the listed causes were diagnoses, as Franz argues, the reader would be equally justified in concluding that the doctor believed the child suffered one of the other listed causes—shearing forces from back-and-forth head motion, a fall from a 2-story height, or a motor vehicle accident with ejection—but there is no indication that the child suffered from any of these. Franz also cites other unexplored conditions such as abnormally high glucose levels, diabetes, premature birth, and a half-sibling's previous death from Sudden Infant Death Syndrome but, unlike the applicant in *Briggs*, Franz did not produce evidence that these conditions contributed to the child's injuries. Here the overriding causation evidence comes from Franz's statement to police that he dropped the baby on his steel-toed boot, picked her up and inadvertently threw her, whereupon she rolled into another room. The speculative effects of other unexplored causes pale in significance against Franz's admission. Trial counsel testified that Franz's decision to plead guilty was based on counsel's reading of the medical records, his conversation with Franz's parents, and his conversation with Franz.[2] Trial counsel testified that his conversations with Franz "enlightened" him as to the

---

[2] Franz bases his argument in part on trial counsel's alleged admissions, some of which Franz overplays. Franz argues that trial counsel failed to educate himself on medical terms and findings, but trial counsel's testimony was that he remembered looking up medical terms and could not remember whether "blood dyscrasia" was among them. Franz asserts that trial counsel admitted that he "probably should have applied to the court for funding of an expert witness." Instead, counsel testified that "was one avenue I could have taken." When asked whether, if he had to do his representation over again, he would hire an expert, trial counsel responded, "Sitting here right now as I speak, being questioned by you, absolutely, yeah, I would." In context, that is less an objective admission of the need for an expert than an expressed wish to avoid having his performance scrutinized through interrogation at trial. When asked directly whether he thought that the failure to hire an expert constituted ineffective assistance of counsel, trial counsel plainly responded, "I don't believe so, no."

events that led to the child's injury and were part of the equation that led to the plea.[3] Unlike counsel in *Briggs* who admittedly failed to obtain needed experts for purely financial reasons, counsel (and Franz) here plainly made the strategic decision to plead based on the merits of the case after discussion with Franz and his parents. Franz faults counsel for failing to depose the State's medical expert, but there is no indication that the deposition would have revealed any cracks in the State's case. In another case, some of these factors might be sufficient to show deficient performance. Based on the record presented, Franz has not demonstrated that his trial counsel's performance fell below a reasonable standard.

We are also not persuaded that Franz has demonstrated that trial counsel's failure to hire an expert harmed him. Unlike *Briggs*, where the applicant hired several experts who testified that she likely did not cause the child's injuries, here Franz is only speculating that investigation of the "diagnosis" of blood dyscrasia would have revealed exculpatory evidence that would have led him not to plead guilty. While we cannot rule out the possibility that such evidence exists, the record before us does not contain such evidence or persuasive indications that it exists. Franz argues that excessive bleeding due to blood dyscrasia can cause conditions that resemble the effects of great intentional force trauma to the head, and bluntly opines that "[t]he excessive damage caused by the brain was not caused by such a blow, but by a minor one caused accidentally as the Appellant described." This assertion of fact is not supported by evidence that the child actually suffered from blood dyscrasia or that the condition had the described effect in this case. Finally, we note that,

_____

[3] Although Franz waived attorney-client privilege for the hearing on the motion for new trial, his right to avoid self-incrimination was invoked to curtail interrogation of trial counsel regarding their conversations.

although the trial court sentenced Franz to the maximum term available under the plea bargain, the sentence is far less than the life term authorized by statute. The record does not persuade us that hiring an expert would have generated information that would have altered either his decision to plead guilty or his punishment. Franz has not shown a reasonable probability that, but for counsel's decision not to hire an expert, he would not have pleaded guilty and the result at trial could likely have been different.

We affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: August 22, 2012

Do Not Publish